NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

ZOE TORRES, et al.,
*Plaintiffs/Appellees,*

*v.*

COLLIN REEVES,
*Defendant/Appellant.*

No. 1 CA-CV 25-0759

FILED 07-31-2026

---

Appeal from the Superior Court in Maricopa County
No.  CV2019-015647
The Honorable Scott A. Blaney, Judge

**AFFIRMED**

---

COUNSEL

Womble Bond Dickinson (US) LLP, Phoenix
By Susan M. Freeman, Yalda Godusi Arellano
*Co-Counsel for Defendant/Appellant*

Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, Phoenix
By William Drury, Brian R. Booker, Annelise Dominguez
*Co-Counsel for Defendant/Appellant*

Gammage & Burnham, P.L.C., Phoenix
By Cameron C. Artigue, Kevin G. Brown
*Co-Counsel for All Plaintiffs/Appellees*

The Slavicek Law Firm, Phoenix
By Brett L. Slavicek, James E. Fucetola
*Co-Counsel for Plaintiff/Appellee Zoe Torres*

The Palumbo Law Firm, Phoenix
By Scott I. Palumbo
*Co-Counsel for Plaintiff/Appellee Christopher & Shannon Dillard*

---

## MEMORANDUM DECISION

Judge Andrew J. Becke delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**B E C K E**, Judge:

¶1 Defendant Collin Reeves ("Reeves") appeals a jury verdict in favor of Zoe Torres, Christopher Dillard, and Shannon Dillard (collectively "Plaintiffs") for the wrongful deaths of their children, Jesel Morales (Zoe's child) and Audrianne Dillard (Christopher and Shannon's child). Reeves also appeals the superior court's denial of his motion for new trial or remittitur. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 Around 6:30 p.m. on October 5, 2018, 20-year-old Audrianne was driving a Ford Focus westbound on McKellips Road with her boyfriend, 23-year-old Jesel, in the passenger seat and their dog in the back seat of the car. At the same time, Reeves was driving his Ford F-250 eastbound on McKellips Road after drinking six beers in 90 minutes at a work event. Lori Gleeson was also driving eastbound on McKellips Road. Reeves cut her off and sped past her at what Gleeson estimated was at least sixty-two miles per hour. The speed limit on that stretch of roadway was fifty miles per hour.

¶3 Before Reeves entered the Alma School Road intersection, the traffic light turned from yellow to red. Gleeson then saw Reeves "jump on the gas" and run the red light. At that exact moment, Audrianne made a left

turn southbound onto Alma School Road and Reeves struck her car, killing Audrianne, Jesel, and their dog.

¶4        Gleeson called 911 and reported the collision. When police officers arrived, Reeves was about fifty yards from the crash, appearing disheveled with his zipper down and "some sort of liquid on his shirt and pants." Reeves initially said his son urinated in a cup earlier that morning, but later admitted to lying and that he believed he urinated on himself. Reeves also stated that, in the past, he would urinate in a cup or bottle in his car when he did not want to stop driving. Reeves showed all six clues of impairment during the horizontal gaze nystagmus test. Reeves consented to a portable breath test, which revealed his blood alcohol concentration ("BAC") to be 0.145, well over the legal limit. After transporting Reeves to the police station, Reeves voluntarily provided two blood samples separated by one hour. Reeves's BAC was 0.129 and 0.107 two and three hours after the crash, respectively.

¶5        In December 2019, Plaintiffs brought this case against Reeves, Reeves's employer, and the venue where he consumed the alcohol. Claims against the latter two were resolved by stipulation and they were dismissed as parties before trial. Reeves answered, denying any negligence and asserting several affirmative defenses, including lack of causation and comparative fault. This civil case was stayed pending Reeves's criminal prosecution. In 2021, Reeves pled guilty to felony endangerment and was placed on supervised probation for three years, including a requirement that he serve 12 months in jail. After learning Reeves was driving under the influence of alcohol at the time of the accident, Plaintiffs sought and obtained leave to amend their complaint to add a claim for punitive damages.

¶6        Trial was held in August 2024. Plaintiffs called several witnesses, including Sergeant Stuart Williams (the criminal case's lead investigator and accident reconstructionist), several police officers who responded to the crash, the victims' family members, Gleeson, and Reeves. Reeves called accident reconstructionist Dr. Joseph Peles as his only witness.

¶7        At the end of a four-day trial, the jury returned a verdict in favor of the three Plaintiffs, awarding them $30 million in damages each: $8 million in compensatory damages and $22 million in punitive damages. The jury found Audrianne 12% at fault and Reeves 88% at fault. After apportioning comparative fault, the court entered a judgment awarding each plaintiff $26.4 million, consisting of $7.04 million in compensatory

damages and $19.36 million in punitive damages. The total judgment was $79.2 million. As the prevailing parties, Plaintiffs were also awarded $14,531.04 in taxable costs per A.R.S. § 12-332.

**¶8** Reeves filed a timely motion for new trial or remittitur, arguing: (1) the fault apportionment was against the weight of the evidence; (2) Plaintiffs' did not establish Reeves's outrageous conduct caused their injuries; (3) Plaintiffs' counsel's statements during closing arguments improperly influenced the verdict; (4) the verdict was grossly disproportionate to Reeves's income; (5) Plaintiffs' grief did not entitle them to $8 million in compensatory damages; (6) the verdict was excessive in comparison to analogous Arizona verdicts; (7) the punitive damages awarded violated due process; and (8) the verdict should have been offset by advance payments by Reeves in the amount of $1.2 million.

**¶9** After oral argument, the court agreed Reeves was entitled to a $1.2 million credit for payments already made on his behalf but otherwise denied his motion. Reeves timely appealed and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-2101(A)(1), -120.21(A)(1).

## DISCUSSION

**¶10** Reeves argues the superior court erred in denying his motion for new trial or remittitur. We review the denial of a motion for new trial for an abuse of discretion. *Jaynes v. McConnell*, 238 Ariz. 211, 215–16, ¶ 13 (App. 2015). The superior court is afforded wide discretion in deciding a motion for new trial. *See City of Glendale v. Bradshaw*, 114 Ariz. 236, 237–38 (1977). In ruling, the superior court must "pass on the weight of the evidence to determine if substantial justice has not been done between the parties." *Walsh v. Advanced Cardiac Specialists Chartered*, 229 Ariz. 193, 197, ¶ 15 (2012) (internal quotations omitted) (quoting *Smith v. Moroney*, 79 Ariz. 35, 38 (1955)). "The court 'may not simply substitute its judgment for the jury's.'" *Ahmad v. State*, 245 Ariz. 573, 576, ¶ 5 (App. 2018) (quoting *Soto v. Sacco*, 242 Ariz. 474, 477, ¶ 7 (2017)). "Remittitur is proper only when the court 'is firmly convinced' that the verdict 'reflects an exaggerated measurement of damages' and 'is contrary to the weight of the evidence.'" *Id.* (quoting *Soto*, 242 Ariz. at 478, ¶¶ 8-9).

## I. Reeves Waived His Sufficiency of Evidence Arguments.

**¶11** In his opening and reply briefs, Reeves argued the evidence did not support a finding by clear and convincing evidence that he acted with an "evil mind," a required showing for a punitive damages award.

Reeves also argued that, even if the evidence did support the finding, it did not establish his outrageous conduct was the proximate cause of Plaintiffs' injuries. At oral argument, however, Reeves withdrew these arguments, conceding that there was sufficient evidence from which the jury could conclude that Reeves acted with an "evil mind" and that his actions caused Plaintiffs' damages. In light of that concession, we treat these arguments as waived. *See In re Leon G.*, 204 Ariz. 15, 17, ¶ 2 n.1 (2002) (Arizona appellate courts generally "will not examine waived or moot questions.").

## II. The Punitive Damages Awards Were Not Unconstitutionally Excessive.

**¶12** Reeves argues that under due process principles, the punitive damages award was excessively high. The Due Process Clause of the United States Constitution provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause "imposes a substantive limit on the size of punitive damages awards." *Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 501, ¶ 93 (App. 2008) (quoting *Hilgeman v. Am. Mortg. Sec., Inc.*, 196 Ariz. 215, 222, ¶ 26 (App. 2000)).

**¶13** We review *de novo* a due process challenge to a punitive damage award. *See Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 230 Ariz. 592, 609, ¶ 83 (App. 2012). "The role of gatekeeper over punitive damages verdicts is one of the most challenging that has been placed upon appellate judges in civil cases." *Pope*, 219 Ariz. at 504, ¶ 107 (cleaned up) (quoting *Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*, 181 F.3d 446, 450 (3d Cir. 1999)).

**¶14** When reviewing punitive damages awards, we consider the "*Gore* guideposts": "(1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). Because there are no sufficiently analogous civil penalties for wrongful death resulting from a car crash, the third guidepost is inapplicable. *Cf. Pope*, 219 Ariz. at 501, ¶ 94 n.19 (quoting *Cont'l Trend Res., Inc. v. OXY USA Inc.*, 101 F.3d 634, 641 (10th Cir. 1996)) (noting that

common law torts are often not comparable with statutory penalties and declining to analyze the third guidepost in an aiding and abetting action).

### A. Degree of reprehensibility

¶15    When determining the reprehensibility of a defendant's conduct, we look at whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm*, 538 U.S. at 419. Compensatory damages are presumed to make a plaintiff whole, so punitive damages should only be awarded if the defendant's culpability "is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *Id.*

¶16    Three reprehensibility factors are present here: physical harm, reckless disregard, and repeated actions.

¶17    Conduct that causes physical harm as opposed to economic harm weighs in favor of reprehensibility. *See Gore*, 517 U.S. at 576. The harm here is the most extreme example of physical harm: the deaths of two young people.

¶18    Reckless disregard is also present. "Within the reprehensibility scale suggested by *Gore*, however, 'acts of violence or threats of bodily harm . . . [are] the most reprehensible, followed by acts taken in reckless disregard for others' health or safety, affirmative acts of trickery and deceit, and finally, acts of omission and mere negligence." *Hudgins v. Sw. Airlines, Co.*, 221 Ariz. 472, 490, ¶ 52 (App. 2009) (alteration in original) (quoting *Florez v. Delbovo*, 939 F. Supp. 1341, 1348–49 (N.D. Ill. 1996)). Reeves's testimony at trial supports that his conduct evinced a reckless disregard for the health or safety of others. He testified that he knew that driving drunk the night of the crash "created a substantial risk of harm or death to others." He continued to drink and drive even after being educated on the dangers of doing so. He also acknowledged that he "intentionally disregarded the danger [he was] well aware of." Reeves's testimony that he knew that drinking and driving was dangerous, yet

continued to do it anyway, choosing to put others at risk of death, demonstrates reprehensible conduct.

**¶19**     Repeated actions are more supportive of reprehensibility than isolated incidents. *See Gore*, 517 U.S. at 576–77. Contrary to Reeves's assertion, repeated actions do not need to have involved the same plaintiffs each time. *See Nardelli*, 230 Ariz. at 610, ¶ 89 (quoting *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 502 (1987)) (noting that repeated actions may occur when an insurer makes arbitrary decisions as an "established company policy"). Reeves testified that he drank and drove "every month for more than a decade leading up to the crash." He did this even after being educated on the dangers of drinking and driving. Reeves's engagement in repetitive drunk driving is reprehensible.

**¶20**     Considering the evidence and these factors,[1] Reeves's conduct is at the higher end of the reprehensibility scale.

> *B.*     *Disparity between harm suffered and punitive damages*

**¶21**     A punitive damages award must be reasonable when compared to the compensatory damages award. *Smith v. Olsen*, 257 Ariz. 518, 532, ¶ 53 (App. 2024) (citing *Gore*, 517 U.S. at 580–81). "When compensatory damages are substantial, then a lesser ratio, *perhaps* only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *State Farm*, 538 U.S. at 425 (emphasis added). The ratio here is 2.75:1. *See* A.R.S. § 12-2505 (comparative negligence reduces the full damages award). But substantial compensatory damages do not impose a 1:1 ratio cap, particularly where the compensatory damages are for personal injury resulting in death.

**¶22**     Whether the ratio between punitive and compensatory damages is reasonable is "highly fact-specific." *Smith*, 257 Ariz. at 532, ¶ 53 (citing *State Farm*, 538 U.S. at 425). There "is no bright-line rule" for the calculation of punitive damages, though "a high ratio is only appropriate in situations where the defendant acted egregiously, or the damages are difficult to calculate." *Id.* But an award exceeding a single-digit ratio will likely not satisfy due process. *State Farm*, 538 U.S. at 425.

**¶23**     A 1:1 ratio is not the constitutional limit when large compensatory damages are awarded. *See, e.g.*, *Ondrisek v. Hoffman*, 698 F.3d

---

[1] The remaining factors are not applicable. Financial vulnerability is relevant only to financial harm. Reeves's conduct was neither "trickery or deceit" nor accidental.

1020, 1024, 1029–31 (8th Cir. 2012) (approving a 4:1 ratio in an action for battery, outrage, and conspiracy where compensatory damages were $3 million to both plaintiffs); *Goddard v. Farmers Ins. Co. of Or.*, 179 P.3d 645, 654, 667, 670 (Or. 2008) (approving a 4:1 ratio in a failure to settle action based on a wrongful death verdict where the compensatory damages were $863,274); *Fontaine v. Philip Morris USA Inc*, 277 N.E.3d 585, 591, 606 (Mass. 2026) (affirming a 7:1 ratio in a wrongful death action when the compensatory damages to four plaintiffs totaled more than $8 million); *Mansfield v. Horner*, 443 S.W.3d 627, 645–46 (Mo. Ct. App. 2014) (affirming an 11:1 ratio in a wrongful death action where the compensatory damages were $8.65 million); *Raglund v. DiGiuro*, 352 S.W.3d 908, 921, 924 (Ky. Ct. App. 2010) (approving a 9:1 ratio in a wrongful death action when the compensatory damages were more than $3.3 million); *Eden Elec., Ltd. v. Amana Co.*, 370 F.3d 824, 826, 829–29 (8th Cir. 2004) (affirming a ratio of more than 4.5:1 in a fraud action where the compensatory damages were $2.1 million); *Boeken v. Philip Morris, Inc.*, 26 Cal. Rptr. 3d, 638, 645, 684–87 (Cal. Ct. App. 2005) (approving a ratio of more than 9:1 in a tobacco personal injury action where the compensatory damages were over $5.5 million); *Aleo v. SLB Toys USA, Inc.*, 995 N.E.2d 740, 745, 756–59 (Mass. 2013) (affirming a ratio of nearly 7:1 in a wrongful death, negligence, and breach of the implied warranty of merchantability action where the compensatory damages were more than $2.6 million); *Jolley v. Energen Res. Corp.*, 198 P.3d 376, 379 (N.M. Ct. App. 2008) (affirming a 6.76:1 ratio in a wrongful death action where the compensatory damages were more than $2.95 million); *Planned Parenthood of Colombia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 951, 962–63 (9th Cir. 2005) (approving a 9:1 ratio in a Freedom of Access to Clinic Entrances Act action where "[m]ost of the compensatory awards are substantial"); *see also Kunasek v. Johnson*, 1 CA-CV 20-0061, 2022 WL 4377299, at *11, ¶ 53, *12, ¶ 60 (Ariz. App. Sept. 22, 2022) (mem. decision) (affirming a 3:1 ratio in an aiding and abetting breach of fiduciary duty case where the compensatory damages were $2.625 million).

**¶24** In *Smith*, we considered ratios of 2.67:1 on an intentional infliction of emotional distress claim and 3:1 in assault and trespass claims. 257 Ariz. at 532, ¶ 55. *Smith* involved a dispute between neighbors over a shared easement. *Id.* at 323, ¶¶ 3–4. The defendant had altercations with third parties, harassed the plaintiff's daughter, and interfered with the plaintiff's property rights, among other offensive behaviors. *Id.* at 325, ¶¶ 15–18. We held that, while the conduct was repetitive and intentional, it was not "the most extreme instance" of intentional infliction of emotional distress. *Id.* at 532, ¶ 56. We determined "some award of punitive damages [was] justified" but reduced the ratio to 1:1. *Id.*

¶25        Unlike in *Smith*, Reeves's conduct represents the most extreme drunk driving conduct—a car crash resulting in the deaths of two people. Reeves acted egregiously in choosing to drink and drive after receiving education on the dangers of doing so. He recklessly disregarded the danger his drinking and driving posed to others—and with full knowledge of the possible consequences—regularly repeated that behavior for over a decade until the crash occurred. After considering the facts in this case, the strong showing of reprehensibility, and the ratios upheld in similar cases, we find that the 2.75:1 ratio here is supported.

####       C.      *Applying the* Gore *Guideposts*

¶26        After considering the reprehensibility of Reeves's conduct and the disparity between punitive damages and comparative damages in consideration of the specific facts of this case, the 2.75:1 ratio between punitive and compensatory damages here is constitutional.

### III.    The Court Did Not Abuse Its Discretion in Determining the Jury's Damages Award Was Not Excessive.

¶27        Reeves argues the information he presented on verdicts in comparable cases was sufficient to grant his motion for new trial or remittitur. But comparable verdicts are "only marginally relevant and the [superior] court should not treat other damage awards as conclusive" in considering a motion for new trial. *Soto*, 242 Ariz. at 482, ¶ 22.

¶28        The Arizona Constitution prohibits laws "limiting the amount of damages to be recovered for causing the death or injury of any person." Ariz. Const. art. 2, § 31. Thus, the law leaves the measure of damages "to a jury's good sense and unbiased judgment." *Meyer v. Ricklick*, 99 Ariz. 355, 358 (1965). The jury's award "should not be disturbed unless the award is the result of passion or prejudice." *Hawkins*, 152 Ariz. at 501. Whether the award was the result of passion or prejudice depends on "whether the verdict is 'so manifestly unfair, unreasonable and outrageous as to shock the conscience of the court.'" *Id.* (quoting *Acheson v. Shafter*, 107 Ariz. 576, 579 (1971)). "The amount of the award alone is not sufficient evidence to prove the jury acted with passion or prejudice." *Id.*

¶29        In his motion for new trial or remittitur, Reeves provided the court with information regarding other wrongful death verdicts and settlements in Arizona for decedents aged 18-30. He also provided information about verdicts in wrongful death cases involving intoxicated drivers. Plaintiffs responded with different information regarding twelve Arizona verdicts in wrongful death cases where juries had awarded

damages similar to, or higher than, those awarded here. In denying the motion for new trial, the superior court noted that Reeves's arguments regarding the other verdicts were "unpersuasive" and rejected his "argument that Plaintiffs did not suffer enough grief to justify $8 million" verdicts as "diminish[ing] the jury's unique and critical role of subjectively valuing the Plaintiffs' grief." The court's ruling properly applied *Soto*, 242 Ariz. 474, *Walsh*, 229 Ariz. 193, and *Ahmad*, 245 Ariz. 573.

¶30 Reeves argues that the disparity between the damages awarded here and those in the cases he presented to the superior court shows that the award was the result of passion or prejudice. But "[t]he amount of the award alone is not sufficient evidence to prove the jury acted with passion or prejudice." *Hawkins*, 152 Ariz. at 501. Instead, "[t]he appropriate test of passion or prejudice is whether the verdict is 'so manifestly unfair, unreasonable and outrageous as to shock the conscience of the court.'" *Id.* (citing cases). The record does not show that the jury acted with passion or prejudice.

¶31 At trial, family members of Audrianne and Jesel provided heartbreaking testimony about their losses. How to compensate such a loss is not easily calculated, and based on the gravity of the harm here, Reeves has not shown that the jury's verdict was "so manifestly unfair, unreasonable and outrageous as to shock the conscience of the court." *Id.* Accordingly, Reeves has not shown that the court abused its discretion in denying the motion for new trial when it considered and found information about comparable verdicts, which are of marginal relevance, unpersuasive.

## IV. Reeves Waived His Arguments Concerning Alleged Misconduct During Closing Argument.

¶32 Reeves next argues a new trial was warranted because Plaintiffs' attorney's comments attacking Dr. Peles's professional integrity and arguments about causation and damages in his closing argument improperly influenced the jury, leading to an "extraordinarily excessive verdict."

¶33 Reeves did not object at trial to any of the comments he now alleges were improper. He did not request a curative instruction or move for mistrial. Reeves "withheld the opportunity for corrective action" from the superior court and took his chance with the jury's verdict, only raising this argument in his motion for new trial. *See Copeland v. City of Yuma*, 160 Ariz. 307, 310 (App. 1989). He has, therefore, waived these arguments and we will not consider them on appeal. *See State v. Moody*, 208 Ariz. 424, 460,

¶ 153 (2004) (stating failure to object to a comment in closing argument waives that argument on appeal); *accord* Ariz. R. Evid. 103(a).

## V. The Superior Court Was Not Required to Consider Untimely and Undisclosed Evidence of Reeves's Net Worth.

**¶34** Reeves argues the superior court erred when it refused to reduce the punitive award in light of Reeves's net worth.

**¶35** Under Arizona law, plaintiffs are not required to present evidence of a defendant's wealth to recover punitive damages. *Rustin v. Cook*, 143 Ariz. 486, 491 (App. 1984). While a defendant's financial position is *relevant*, it is not required to recover punitive damages. *See Hawkins*, 152 Ariz. at 497–98 ("One category of relevant evidence is the defendant's financial position . . . . These factors are presented only as guidelines to the character of evidence that is *relevant* to assessing punitive damages and should be viewed as neither exhaustive nor exclusive.").

**¶36** In his motion for new trial, Reeves attached an exhibit detailing his net worth. However, Reeves had not disclosed information about his finances, including his net worth, before trial. And at trial, Reeves's counsel admitted the same and explicitly withdrew any poverty defense.

**¶37** Reeves contends the superior court was required to consider his untimely evidence due to its "gatekeeper" obligations, citing *Arellano v. Primerica Life Ins. Co., Co.*, 235 Ariz. 371 (App. 2014). However, *Arellano* states *this* court on appeal acts as a "gatekeeper" over punitive damages verdicts and, "[a]s such, we review a punitive damages award de novo." 235 Ariz. at 378, ¶ 34. We have done so here, *see supra* ¶¶ 12-26, and found the punitive damage award to be constitutional and not a violation of due process.

**¶38** Reeves also cites to *Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415 (1994) and claims the U.S. Supreme Court held a "trial court erred in deferring to trial evidence alone" in its review of a punitive damage award. This is incorrect. In *Honda Motor Co.*, the U.S. Supreme Court reviewed an Oregon constitutional provision that prohibited judicial review of the amount of punitive damages awarded by a jury unless the court could conclude there was no evidence to support the verdict. 512 U.S. at 418. The Court held this provision violated due process. *Id.* at 432. Arizona does not have a constitutional provision prohibiting judicial review of punitive damage awards, nor did the superior court here refuse to review the

punitive damage award. It merely declined to consider Reeves's untimely evidence of net worth.

**¶39**        Reeves fails to cite any Arizona authority that would compel such consideration. Instead, Reeves cites an Alabama Supreme Court case that held a trial court erred in not reducing punitive damages when evidence was presented in a post-judgment hearing necessitating a reduction, even though that evidence was not presented to the jury. *Wilson v. Dukona Corp., N.V.*, 547 So. 2d 70, 74 (Ala. 1989). However, how Alabama courts handle judicial review of punitive damage awards is not relevant to our analysis under Arizona law. Neither is Reeves's citation to *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22 (1991), which held that Alabama's review and reduction procedure satisfied due process requirements.

**¶40**        Reeves further argues that, under the Arizona Supreme Court's ruling in *Hawkins*, 152 Ariz. at 501, punitive damages awards that "financially kill" defendants cannot stand. But in *Hawkins*, financial evidence had been properly and timely presented. Reeves fails to show the superior court abused its discretion by not considering his untimely evidence of net worth in its review of the punitive damages award entered against him. Reeves could have disclosed and presented evidence of his limited financial resources, but he failed to do so.

## CONCLUSION

**¶41**        We affirm.

